**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**G&G CLOSED CIRCUIT EVENTS, LLC,**

***Plaintiff*,**

**v.** **Case No. 5:24-CV-1262-JKP**

**BETTER BEER PARTNERSHIP, LLC, et al.,**

***Defendants*.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff G&G Closed Circuit Events, LLC's Motion for Attorney's Fees (ECF No. 49). After prevailing on claims under 47 U.S.C. § 553, Plaintiff seeks $11,880 in attorney's fees. Defendants Robert Martindale II and Kylie M. Martindale (collectively, "Individual Defendants") filed a motion to dismiss (ECF No. 52) asking the Court to reject or, alternatively, reduce Plaintiff's requested fee. Plaintiff did not file any response to the motion to dismiss. Because there is no legitimate basis for the motion to dismiss, the Court denies that motion. The Court, however, will liberally construe the filing as a response to the motion for attorney's fees. For the reasons explained below, the Court grants in part and denies in part Plaintiff's motion. The Court awards Plaintiff $3,861 in attorney's fees.

Also before the Court is Plaintiff's Bill of Costs (ECF No. 51). Defendants have not filed any objection or response to the Bill of Costs. For the reasons explained below, the Court grants the Bill of Costs and awards Plaintiff $2,330 in costs.

## I. BACKGROUND

This is an "Anti-Piracy" case involving violations of the Federal Communications Act of 1934 (the "Communications Act" or the "Act"). *See* 47 U.S.C. § 553. Plaintiff sued the Individual

Defendants and an entity defendant, Better Beer Partnership, LLC ("Better"), alleging that they unlawfully broadcasted a boxing match, for which Plaintiff held the exclusive commercial license to distribute. ECF No. 1.

Following an early status conference, the Magistrate Judge directed the parties to file a joint advisory regarding the status of settlement negotiations. *See* ECF No. 23. The parties thereafter advised the Court that they "have conducted settlement negotiations and have exchanged settlement offers," but "have not been able to reach an agreement nor have they resolved the claims asserted in this lawsuit." ECF No. 24. When the Court denied a motion to dismiss filed by the Individual Defendants, it noted that "it appears that this case may warrant an early mediation deadline," in light of "the pro se status of the defendants who have appeared in this action, the issues involved, and the apparent insolvency of the entity defendant." *See* ECF No. 28 at 2. Accordingly, it directed "the parties to include in their Joint Scheduling Recommendations an early date for mediation and a statement as to whether they believe that mediation with a Magistrate Judge would be beneficial." *See id*. at 2–3. The parties' scheduling recommendations included a mediation deadline for about seven months later but did not mention mediation with a Magistrate Judge. *See* ECF No. 29. The parties also included deadlines for exchange of written offers of settlement. *Id*. ¶ 2. The parties recognized that such offers would not be filed with the Court, but shall be retained by the parties, because "the Court will use these in assessing attorney's fees and costs at the conclusion of the proceedings." *Id*. The Magistrate Judge thereafter issued a scheduling order, *see* ECF No. 31, and set the matter for video mediation, *see* ECF No. 37, which was unsuccessful, *see* ECF No. 41.

Plaintiff later moved for summary judgment. ECF No. 44. The Court granted the motion as it pertained to the Individual Defendants. ECF No. 48 at 1. As to the entity defendant, the Court

construed the motion as a motion for default judgment and granted the motion so construed. *Id.* The Court awarded Plaintiff $3,750 in damages, post-judgment interest, and costs and attorney's fees, with the amount of costs and attorney's fees to be determined. *Id.* at 14. Regarding attorney's fees, the Court ordered Plaintiff to file its request for fees by motion no later than July 30, 2026. *Id.* Regarding costs, the Court ordered Plaintiff to file a bill of costs in the form required by the Clerk of Court within fourteen days of the entry of a final judgment. *Id.*

Plaintiff timely filed its motion for attorney's fees, supported by an affidavit from Plaintiff's counsel, David M. Diaz. *Id.* at 5–23. Plaintiff seeks $11,880—calculated based on 39.60 hours of work at a $300 hourly rate. *Id.* at 12. In his affidavit, Mr. Diaz states $300 per hour is reasonable given his experience and expertise in anti-piracy litigation. *Id.* at 13–20. He further contends that it is a customary rate for federal court anti-piracy work in Texas. *Id.* at 14–16. He provides a chart itemizing his 39.60 hours of work. *Id.* at 8–11. In their motion to dismiss, which the Court considers as their response to Plaintiff's motion for fees, the Individual Defendants assert that "Plaintiff rejected multiple reasonable settlement opportunities over a year ago and then incurred additional attorney time." ECF No. 52 at 1. They further contend Mr. Diaz's billing records contain impermissible block-billed entries, the "hours claimed are excessive for the work performed," and the requested fee amount is "disproportionate to the nature of this case and the result/relief obtained." *Id.* at 1–2.

Plaintiff has also filed its Bill of Costs in the appropriate form, supported by exhibits to show the costs it incurred. ECF No. 51. Plaintiff seeks $405 in filing fees, $425 in service fees, and $1,500 in investigative costs, totaling $2,330. *Id.* Defendants have not filed any objection or response to the Bill of Costs.

## II. MOTION FOR ATTORNEY'S FEES

Under 47 U.S.C. § 553, the Court may award reasonable attorney's fees to prevailing parties; such an award is not mandatory, however, and is left to the Court's discretion. *J&J Sports Prods., Inc. v. Kirkpatrick*, No. 4:18-CV-310, 2020 WL 5504469, at *11 (E.D. Tex. Sept. 11, 2020); *see also Tex. Com. Bank Nat'l Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990) ("An award of attorney's fees is entrusted to the sound discretion of the trial court.").

Federal courts almost uniformly apply a lodestar calculation method under statutory fee-shifting provisions. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("[T]he lodestar approach . . . [has] 'achieved dominance in the federal courts.'") (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002)). Thus, to calculate an appropriate attorney's fee in this case, the Court first employs the lodestar method whereby it "[m]ultipl[ies] the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). The Court then turns to the twelve factors mentioned in *Johnson v. Georgia Highway Express, Inc.* ("*Johnson* factors") to gauge whether to increase or decrease the lodestar amount. 488 F.2d 714 (5th Cir. 1974).[1] Many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double counted. *See id.*; *Saizan*, 448 F.3d at 800 ("The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Importantly, in calculating attorney's fees, the Court's goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

**A. Lodestar Calculation**

The Court disagrees with the $11,880 lodestar provided by Plaintiff. For the reasons explained below, the Court calculates a lodestar of $7,722.

**1. Reasonable Hourly Rate**

First, Mr. Diaz requests an hourly rate of $300, pointing to his expertise and experience in anti-piracy litigation, as well as numerous Texas federal courts accepting that rate as the customary fee in similar cases. ECF No. 49 at 13–20. The Court agrees $300 per hour is reasonable for purposes of the lodestar calculation, based on the rates awarded to counsel in substantially similar litigation within the Western District of Texas. *See, e.g.*, *G&G Closed Circuit Events, LLC v. Kelpim, Inc.*, *et al.*, No. 3:24-cv-00408-LS (W.D. Tex. Jan. 13, 2026) (awarding Mr. Diaz an hourly rate of $300 in a Communications Act case successfully litigated through summary judgment); *G&G Closed Circuit Events, LLC v. 528 Inv-Jev, LLC*, No. EP-20-CV-116-KC, 2023 WL 11939152, at *5 (W.D. Tex. Feb. 17, 2023) (awarding Mr. Diaz an hourly rate of $300 in a Communications Act case successfully litigated through default judgment); *J&J Sports Prods., Inc. v. Gutierrez*, No. DR-19-CV-057-AM/VRG, 2021 WL 2930094, at *5 (W.D. Tex. Mar. 16, 2021) (same).

**2. Reasonably Necessary Hours**

The Court finds that a reduction in the number of reasonably necessary hours is warranted for two reasons. First, the Court agrees with the Individual Defendants that Mr. Diaz's billing entries reflect improper block billing. Block billing is the disfavored practice of including multiple tasks in one billing description with a total amount of time spent. *Fundamental Sports Mgmt., LLC*

*v. Zokaei*, No. 5-20-CV-00774-RBF, 2023 WL 11996866, at *4 (W.D. Tex. July 14, 2023). The practice is disfavored "because it impairs the required reasonableness evaluation" by preventing courts from "accurately determin[ing] the number of hours spent on any particular task." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). Having reviewed the relevant billing entries, the Court finds repeated instances of block billing. For example, an entry for April 30, 2026, contains four different tasks in a span of 2 ½ hours: "Prepare Plaintiff's Response in Opposition to Defendant's Motion to Dismiss; research regarding same; prepare Appendix and exhibits in support of response; file same with the Court." ECF No. 49 at 11. Plaintiff's counsel used similar block billing in many other entries, including entries on the following dates: November 3, 2024; April 23, 2025; June 9, 2025; August 25, 2025; October 1, 2025; and April 14, 2026. *Id.* at 8–11. This kind of imprecise documentation impedes the Court's ability to discern the reasonable amount of time spent on given tasks. Accordingly, a percentage reduction in hours is warranted. *See Castro v. Kory*, No. SA-20-CV-01022-XR, 2026 WL 1134073, at *7 (W.D. Tex. Apr. 23, 2026) (finding a 10% reduction of hours appropriate "to account for the vagueness of certain entries, [counsel's] use of block billing, and the Court's difficulty in determining whether his hours were reasonable"); *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:10-CV-2618-D, 2016 WL 6330429, at *11 (N.D. Tex. Oct. 27, 2016) (applying 10% reduction for block-billing); *Barrow*, 2005 WL 6789456, at *6 (reducing one attorney's hours by 20% for "extensive block billing" and reducing another attorney's hours by 10% percent for engaging in "some bock billing").

Second, the Court finds that an hour reduction is warranted based on the low level of difficulty in this case. *See Zokaei*, 2023 WL 11996866, at *4 ("The Court also considers the

difficulty of the matter at hand when considering whether the total hours are reasonable.”). Indeed, Mr. Diaz concedes this case “did not involve any novel or difficult questions.” ECF No. 49 at 13. He further explains that, due to the lack of complexity, he was able to depend on his “stored knowledge” and previous briefing filed in similar litigation. *Id.* The Court agrees with counsel’s assessment regarding the difficulty of the case and therefore finds that a reduction in the number of hours reasonably spent on the case is appropriate.[2] *See Zokaei*, 2023 WL 11996866, at *4 (concluding that “reduction in the number of reasonably necessary hours is warranted in consideration of the relative simplicity” of the case).

Based on the above considerations, the Court in its discretion believes that a 35% reduction is warranted. Accordingly, the lodestar in this case is $7,722, which is the product of 25.74 hours (a 35% reduction from 39.60 hours) and a reasonable rate of $300.00 per hour. Having calculated the lodestar, the Court now turns to the *Johnson* factors to determine whether the Court should deviate from that amount.

**B. Lodestar Adjustment**

Upon considering the *Johnson* factors, the Court makes a downward adjustment of the $7,722 lodestar by 50%. In particular, the eighth and twelfth *Johnson* factors—the results obtained and the awards in similar cases, respectively—counsel in favor of a significant downward adjustment to the lodestar. The remainder of the *Johnson* factors have all been subsumed within the lodestar calculation. To the extent the factors have not been so subsumed, they are neutral as applied to the facts of this case and do not counsel in favor of an adjustment upward or downward.

[2] Because the Court considers the difficulty of the case in determining the lodestar figure, it will not apply the “novelty and difficulty of the questions” *Johnson* factor, or other overlapping factors such as the time and labor required and the skill requisite to perform the legal service, when deciding whether the lodestar should be adjusted. To do so “would be impermissible double counting.” *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (per curiam).

"[I]t is not necessary for a district court to examine each of the factors independently if it is apparent that the court has arrived at a just compensation based upon appropriate standards." *See Sanders v. Barnhart*, No. 04–10600, 2005 WL 2285403, at *2 (5th Cir. Sept.19, 2005) (per curiam).

**1. Results Obtained**

First, the results obtained in this case—a damages award of only $3,750, after Plaintiff sought $60,000—strongly counsel in favor of a lodestar reduction. Of all the *Johnson* factors, "the most critical factor in determining whether the lodestar amount should be adjusted is the degree of success obtained." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). And when measuring the degree of success, the Court can look to "the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *see also W. v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded."). Here, the Court awarded Plaintiff only a miniscule portion of the total damages sought. *See* ECF No. 44 at 20 (Plaintiff requesting $10,000 in statutory damages and $50,000 in additional damages through summary judgment motion). Relatedly, Plaintiff's request for fees is grossly disproportionate to the notably small damages award. *See Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (explaining that proportionality between fee request and damages award should be considered when assessing a fee award). Plaintiff's counsel requests $11,880 in fees—approximately 3.3 times the amount of damages awarded. And even after reducing the lodestar, it is more than double the damages award. Although there is no *per se* requirement for proportionality in determining an award of attorney's fees, and the Court should not reduce the fee award based on a low damages award alone, the Fifth Circuit has indicated that "proportionality remains an

appropriate consideration in the typical case." *Combs v. City of Huntington*, 829 F.3d 388, 396 (5th Cir. 2016). Here, the lack of proportionality is one indication that a reduction is warranted.

The results obtained also support a lodestar reduction based on the failure to settle the case before summary judgment and Plaintiff overvaluing its case at settlement. The undersigned's initial review of this case showed a case that warranted early mediation for multiple reasons. *See* ECF No. 28. The suggestion of early mediation is unusual. Indeed, it is quite rare for the undersigned to make such a suggestion. But the circumstances of this case showed a case that presented an opportunity for early resolution through mediation with a Magistrate Judge. The Individual Defendants, furthermore, oppose attorney's fees at least in part on grounds that Plaintiff rejected reasonable settlement offers. *See* ECF No. 52 at 1. Although they do not provide specific information or evidence about the alleged settlement offers, such as the dollar amounts or the terms of payment, Plaintiff does not contest that the Individual Defendants made settlement offers. The reasonableness of such offers naturally correlates to ultimate success on claims asserted and damages to be recovered. Given the relatively limited success in this case—$2,500 in statutory damages upon a request for $10,000 and $1,250 in additional damages upon a request for $50,000—the failure of Plaintiff to contest the reasonableness of settlement offers speaks volumes. Moreover, while the Individual Defendants do not contend they made an offer of judgment under Fed. R. Civ. P. 68, a factor relevant to assessing attorney's fees, *see Gurule*, 912 F.3d at 261 (explaining that the rejection of a favorable Rule 68 offer is one factor courts should consider when weighing a prevailing party's degree of success), pro se litigants often do not know all litigation devices at their disposal. Ultimately, despite the Individual Defendants' failure to provide information concerning the settlement offers, Plaintiff's lack of response disputing the reasonableness of offers favors a significant reduction to the lodestar to account for Plaintiff's

failure to settle this case in January of 2026. *Cf. Radiant Plumbing Serv., Inc. v. Reliant Plumbing & Drain Cleaning, LLC*, No. 1:17-CV-00274-DAE, 2025 WL 1248830, at *3 (W.D. Tex. Apr. 29, 2025) (assessing the "results obtained" *Johnson* factor and explaining that a prevailing party's previous rejection of a settlement offer that was "a fraction" of the amount of damages ultimately awarded did not support lodestar reduction"); *Sistrunk v. TitleMax, Inc.*, No. 5:14-CV-628-RP, 2018 WL 1773307, at *3 (W.D. Tex. Feb. 22, 2018) (finding that the "results obtained" *Johnson* factor favored approving the requested fee award when counsel had "rejected less valuable settlement offers over a series of mediations" before obtaining "meaningful recovery").

Accordingly, the Court finds that the *Johnson* factor concerning the results obtained supports a significant downward departure from the lodestar.

**2. Awards in Similar Cases**

In addition, the twelfth *Johnson* factor—awards in similar cases—favors lowering the lodestar. Based on this Court's experience handling similar cases, and its general expertise in assessing fees, it finds that an $11,880 attorney's fee award is excessive compared to fee awards in cases involving similar legal issues and comparable damages awards. *See Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F.Supp.3d 892, 904 (E.D. Tex. 2017) ("The Court is also an expert on reasonableness of fees and may use its own experience in deciding a fee award.").

Moreover, the Court is not persuaded by the cases Plaintiff provides to show that an $11,880 award is typical. For one, Plaintiff largely cites cases that awarded lower attorney's fee awards. *See* ECF No. 49 at 21–22 (Plaintiff citing to cases awarding $5,000 and $3,000 in attorney's fees). And when Plaintiff does provide cases involving comparable or higher fee awards, the cases are notably distinguishable from this case involving a plaintiff prevailing on claims through summary judgment. For example, Plaintiff points to two cases in which Mr. Diaz

successfully litigated Communication Act claims through bench trials. *Id.* at 22. The Court finds comparisons of such awards unhelpful because the time and labor reasonably necessary to litigate a case varies depending on whether the case is litigated through straightforward motion practice or proceeds to trial. Plaintiff also highlights a $20,000 award from a court in the Southern District of Texas. *Id.* at 21. But that attorney's fee award was based on a one-third contingency fee in a case where the Plaintiff successfully recovered $60,000 in damages. *Id.* It is not helpful to compare such a case to the circumstances here, where Plaintiff recovered only $3,750, and a one-third contingency fee would amount to $1,250. The most comparable case cited by Plaintiff is an award from a court in the Western District awarding $11,250 in attorney's fees under the lodestar method after the plaintiff prevailed on summary judgment. *Id.* at 14. But, again, that case is notably distinguishable; it involved a $15,000 damages award and did not trigger the same concerns related to proportionality and degree of success. *See G&G Closed Circuit Events, LLC v. Kelpim, Inc.*, *et al*., No. 3:24-cv-00408-LS (W.D. Tex. Jan. 13, 2026) (amended final judgment awarding $15,000 in damages and $11,250 in attorney's fees).

Finally, when considering fee awards in similar cases, the Court finds it instructive to compare Plaintiff's requested fee of $11,880 to a potential award of $1,250, which represents a one-third contingency fee in this case. Indeed, "[a]n award equal to one third of the recovery . . . is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas." *J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). While the Court declines to utilize a strict one-third contingency fee in this case because Plaintiff here has provided information for a lodestar calculation, which is the prevailing method for calculating fees in federal court, the $1,250

contingency fee amount does provide an additional basis for finding reasonable fees much lower than those requested in this case.

Accordingly, the Court finds that the *Johnson* factor concerning awards in similar cases also supports a downward departure from the lodestar.

**3. Final Lodestar Reduction**

After applying the *Johnson* factors, the Court finds that a significant downward adjustment to the lodestar is warranted. In its discretion, the Court reduces the $7,722 lodestar by 50%. *See Chamberlain v. Waller Cnty. Asphalt Inc.*, No. 4:19-CV-4941, 2023 WL 25380, at *4 (S.D. Tex. Jan. 3, 2023) (applying a 50% lodestar reduction "in light of [plaintiff's] limited success at trial"); *Riddle v. Tex-Fin, Inc.*, No. CIV.A. H-08-3121, 2011 WL 1103033, at *12 (S.D. Tex. Mar. 22, 2011) (reducing lodestar by 50% after applying the *Johnson* factors and noting that such reduction is "primarily" based on the degree of success achieved). Accordingly, the Court will award Plaintiff $3,861 in attorney's fees.

## III. BILL OF COSTS

As with attorney's fees, the Court may in its discretion award the recovery of costs to prevailing parties under 47 U.S.C. § 553. Plaintiff has submitted a Bill of Costs asking for $405 in filing fees, $425 in service fees, and $1,500 in investigative costs, totaling $2,330. ECF No. 51. Upon review, and having received no objection or response to the Bill of Costs, the Court finds that Plaintiff's requests are reasonable and supported by sufficient evidence. *See id.* at 4–13 (Plaintiff providing invoices documenting filing fees, service-of-process charges, and investigative expenses). Accordingly, the Court will award Plaintiff costs in an amount totaling $2,330, which is the sum of $405 in filing fees, $425 in service fees, and $1,500 in investigative costs.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Attorney's Fees (ECF No. 49). The Court awards Plaintiff $3,861 in attorney's fees. The Court further **GRANTS** Plaintiff's Bill of Costs (ECF No. 51). Plaintiff may recover costs from Defendants in the amount of $2,330. By separate document, the Court will enter a Final Judgment under Fed. R. Civ. P. 58.

**SIGNED this 16th day of October 2026.**

Jason Pulliam

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**